UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE   DIVISION

| | |
|---|---|
| Williamson | Civil Action No. 19-01212 |
| Versus | Judge Michael J Juneau |
| Garber, et al | Magistrate Judge Carol B Whitehurst |

**AMENDED REPORT AND RECOMMENDATION**

The Court amends its February 5, 2020 Report and Recommendation, *R. 13,* as follows.

Currently pending before the undersigned, on referral by the district judge, is a Motion to Dismiss Defendants, Sheriff Garber and Paula Smith, Under Rule 12(b)(6), filed by Defendants, Mark A. Garber in his Official Capacity as Sheriff of Lafayette Parish ("Sheriff Garber") and Paula Smith in her Official Capacity as Warden of Lafayette Parish Jail ("Warden Smith") [Rec. Doc. 6], Plaintiff's Memorandum in Opposition [Rec. Doc. 9], and Defendants' Reply Memorandum [Rec. Doc. 12]. For the reasons explained below, it is recommended that the Motions to Dismiss be granted in part and denied in part.

**I.     BACKGROUND**

According to Plaintiff's Complaint, *R. 1*, on September 17, 2018, Plaintiff, Scott Williamson, was released from University Health Center ("UHC") where he

had been treated for stroke, high blood pressure and diabetes. Upon his release from UHC, Plaintiff discovered his truck had been towed. Plaintiff had security for UHC contact the Lafayette Parish Sheriff to inquire about the vehicle. Upon running his information, the Sheriff's department discovered Plaintiff had a warrant in Texas for a previous incident for which Plaintiff was arrested and booked. At the time of booking, Plaintiff put the LPCC authorities on notice of his medical conditions and his prescription medications for high blood pressure and blood thinner were received from UHC. At that time, Plaintiff signed the required releases for both medications.

On September 19, 2018, Plaintiff was provided his medication for high blood pressure, but was not administered the necessary blood thinner medication. He was told he would have to sign another release, which Plaintiff did. On September 22, 2018, Plaintiff again filed a medical request for the necessary blood thinner medications, as both his feet had swollen and turned purple. On September 23, 2018, Plaintiff was seen by a Nurse Practitioner of the jail, who diagnosed him with foot fungus, and gave him powder and socks. Plaintiff asked again for his blood thinner medications and was again requested to sign another medical release, which he did.

On September 25, 2018, Plaintiff was seen by the Nurse Practitioner for a physical, and once again signed another release for the medical records and

medications that had not been provided to him. Defendants excluded him from any jobs within the jail due to his previous strokes.

On October 24, 2018, Plaintiff requested medical attention and was told he would be seen that day. No blood thinners were administered, and Plaintiff was again required to sign a release, which he did. Thereafter, Plaintiff's cellmate woke for the dinner hour and found Plaintiff unresponsive with facial dragging and signs of stroke. Plaintiff was transported to Lafayette General Medical Center by Acadian Ambulance and was taken to the ICU. Blood tests showed blood coagulation in veins due to the withholding of the blood thinning medication. While hospitalized, and with a deputy present as a witness, the attending physician, believed to be "a Dr. Phillip", indicated to Plaintiff that if he had been given his medication as prescribed, he would not have had another stroke.

Plaintiff filed this action on September 16, 2019 against Defendants alleging violation of his constitutional rights under 42 U.S.C. § 1983 and Louisiana state law claims.[1] Defendants filed the instant motion to dismiss all of Plaintiff's claims against them.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough

---

1 Plaintiff also named the "Government of Lafayette Parish" as defendant.

facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009). But the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must

4

be dismissed.

### III. LAW AND ANALYSIS

In their motion, Defendants seek dismissal of Plaintiff's claim against Warden Smith and Plaintiff's claims against Sheriff Garber for: (1) understaffing; (2) failure to train/supervise; (3) failure to fund/maintain the jail; and (4) failure to provide medical care. *R. 1, ¶ 27 (a-i)*, as well as Plaintiff's Louisiana state laws claims under Louisiana Civil Code Articles 2315, 2322 and 2317.1. As a threshold matter, Defendants contend that the Complaint includes a claim that they are liable for allegedly "creating a hazardous condition caused by water leaking into the H-pod dormitory area." *Id. at ¶ 27(e)*. Plaintiff's Complaint, however, fails to include any factual allegations of such a water leak; nor does Plaintiff address the issue in his Opposition Memorandum. Accordingly, the Court finds that this claim should be dismissed. The Court will consider the remaining claims as follows.

A. *Claims Against Warden Smith*

Defendants argue that Plaintiff's suit against Warden Smith in her official capacity as "the co-policy maker for the Lafayette Parish Jail" must be dismissed because, under Louisiana law, only the Sheriff is responsible for policy making with respect to management of the parish jail. The Court agrees. State law guides the determination as to the official whose decisions represent the official policy of the

5

local government unit. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). Under Louisiana law, the sheriff is a final policymaker with respect to management of the jail. *See Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 613 (E.D.La.,1998) *citing* La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish."); La.Rev.Stat. 33:1435 ("Each sheriff ... shall preserve the peace and apprehend public offenders."). "Sheriffs in Louisiana are final policy makers with respect to management of the jail. This duty includes the obligation to provide medical care for the prisoners." *Jones*, 4 F.Supp.2d at 613; *see also Oladipupo v. Austin*, 104 F.Supp.2d 654, 661 (W.D.La.2000) (the sheriff is responsible for the administration of jail, including provision of medical care).

As Warden Smith was not a final policy maker and is not alleged to be directly involved in any of the alleged violations, the Court will dismiss the official capacity claims against her and will consider the alleged violations against Sheriff Garber.

B. *§ 1983 Claims Against Sheriff Garber*

Plaintiff sues Sheriff Garber in his official capacity as the Sheriff of Lafayette Parish. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir.1999). Accordingly, an official-capacity claim against Garber would in reality be a claim against the municipality or local government unit.

*Alexander v. City of Gretna*, 2010 WL 3791714, at *3 (E.D.La., 2010). As the Fifth Circuit has explained:

> In order to hold a municipality or local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue, or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 Fed. App'x 547, 549 (5th Cir. 2003).

   1. Understaffing

To state a claim of understaffing, a plaintiff must plead that there was a policy at the jail, promulgated or implemented by the policy making official, of deliberate indifference to the risk of under-staffing and that this policy caused his injury. *Payton v. CEO, Corrections Corp. of America*, 2015 WL 52104, at *3 (W.D.La.,2015). Evidence of understaffing, without more, is not proof of official

7

policy. *Id. citing Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D.Tex.,1987) ("Nor can plaintiffs general and conclusory allegations of [] inadequate staffing support a section 1983 action . . . Mere understaffing, without more, is not proof of an official policy."). Rather, evidence of under-staffing would become proof of an official policy "only if more complete [] staffing were possible and it was the deliberate intent of the policy making official not to adequately [] staff the jail, having in mind a gross indifference to the medical needs of the pretrial detainees." *Id.* When understaffing appears to have contributed to a violation of an pretrial detainee's constitutional rights, a causal link exists between that violation and the policy if officials are aware of the staffing problem but fail to take corrective action. *Payton*, 2015 WL 52104, at *3.

In this case, Plaintiff's Complaint merely alleges that Defendants operated "a facility with inadequately staffed medical facility" and "an understaffed and/or inadequately staffed facility," *R. 1 at ¶27(a) and (b)*. Plaintiff's statement that "there is a direct relationship between not being provided with the proper medication and the lack of proper staff to see to the administration of medical needs of its inmates," *R. 9, p. 7*, is nothing more than the inference of a policy "merely because harm resulted from some interaction with a governmental entity." See *Oklahoma City,* 471 U.S. at 823 (1985). As such, Plaintiff has failed to identify any policy or custom

8

related to understaffing that violated his constitutional rights.

    2. <u>Failure to Train or Supervise</u>

A supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate "when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976). To hold a supervisory official so liable, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998) *quoting Farmer v. Brennan*, 511 U.S. 825, 837/(1994).

In his Opposition Memorandum, Plaintiff cites paragraphs 7, 8, 9 and 32 of his Complaint in support of his claim for failure to supervise/train. *R. 9, pp. 6-7*. The allegations as to Sheriff Garber state that he is "the policy maker" for the Sheriff's office and the jail and that "under the color of custom or usage [he] subjected

9

[Plaintiff]... to the deprivation of rights, privileges and immunities secured by the United Stated Constitution in violation of 42 U.S.C. § 1983.... [which] caused his injuries to persist without treatment." *Id.* These allegations provide only boilerplate recitations of a § 1983 claim and fail to indicate how any training, supervision, monitoring or discipline program is defective.

    3. <u>Failure to Fund or Maintain the Jail</u>

Plaintiff alleges that Sheriff Garber "failed to maintain a facility which was equipped to house prisoners" and "breached [his] duty to provide for a good and sufficient jail and to provide for the maintenance of the physical plant of the Lafayette Parish Jail." *R. 1, ¶¶ 24, 25*. He further alleges that Sheriff Garber is responsible for the "pattern, practice and custom of not properly funding the Lafayette Parish Jail." *Id. at ¶26.*

Pursuant to Louisiana law, the Sheriff is responsible for the management of the jail and the inmates. The parish governing authority, however, is charged with the duty to provide a "good and sufficient jail" and to provide for the physical maintenance of parish jails and prisons. *Morris v. Lafayette Parish Correctional Center*, 2019 WL 2480071 (W.D. La 2019).

Plaintiff states that *Cousins v. St. Tammany Parish* Jail, 2015 WL 5017113 (E.D. La. 2015) supports his contention that "the parish in fact had no role or

10

authority over the Sheriff with regard to such policies and procedures [for premises defects]." *R. 9, p. 8*. Contrary to Plaintiff's representation, however, the holding of *Cousins* actually supports Defendants' argument. In *Cousins*, the parish government moved to dismiss the plaintiff's claims against it for alleged unconstitutional conditions of confinement in the parish jail. In dismissing the claims against the parish government, the Court stated, "as the local governing authority, defendant is responsible only for financing and maintaining the jail, pursuant to LSA-R.S. 15:304, 15:702 and 33:4715, while the Sheriff is responsible for the day-to-day operation of the jails, pursuant to LSA-R.S. 13:5539(c) and 15:704."[2] *Id. at 2*.

As all of Plaintiff's allegations related to maintenance and funding of the Parish jail are under the Lafayette parish governing authority, Plaintiff's claims against Sheriff Garber in this regard should be dismissed.

4. <u>Failure to Provide Medical Care</u>

Plaintiff alleges that at the time he was booked into LPCC, he advised the "booking authorities" of his medical condition and signed the "required releases"

---

[2] LSA R.S. 15:304 provides in pertinent part: "All expenses incurred in the different parishes of the state or in the city of New Orleans by ... confinement ... of persons accused or convicted of crimes ... shall be paid by the respective parishes in which the charged may have been committed or by the city of New Orleans, as the case may be"
  LSA R.S. 15:702 provides in pertinent part: "The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons".
  LSA R.S. 33:4715 provides in pertinent part: "The police jury of each parish shall provide ... a good and sufficient jail...."

for administration of his high blood pressure and blood thinner medicines. He further alleges that he was provided with only his high blood pressure medicine. Despite repeated requests for his blood thinner medicine, each time he was instructed to sign another release. He requested medical attention twice and a Nurse Practitioner at LPCC treated him for foot fungus but never gave his blood thinner medicine. On October 24, 2018, Plaintiff was taken to the hospital for a stroke. *R. 1, ¶¶ 12-23*. Under these factual allegations he claims that Defendants (1) failed to provide inmates with necessary and prescribed medication, *Id. at ¶27d*; (2) failed to regularly and properly conduct rounds to check on the well-being of inmates, *Id. at ¶27f*; (3) failed to allow treatment and/or help to Plaintiff knowing he was in severe pain, *Id. at ¶27g*; (4) acted in deliberate indifference to the serious medical needs of Plaintiff in violation of his civil rights, *Id. at ¶27h*; and (5) allowed untrained, non-medical staff to make decisions regarding Plaintiff's treatment, *Id. at ¶27i*.

    Considering the foregoing allegations, the Court agrees with Defendants that Plaintiff's complaint is void of any allegations related to personnel conducting rounds or medical treatment by untrained/non-medical personnel. Accordingly, the Court will consider only the remaining claims of deliberate indifference for failing to allow treatment and/or provide prescribed medication.

A prison official is deliberately indifferent to a pre-trial detainee's serious medical needs in violation of the Fourteenth Amendment if he (1) was subjectively aware of the risk and (2) disregarded the risk by failing to take reasonable measures to abate it. *Burton v. Owens*, 511 Fed.Appx. 385 (5th Cir. 2013) *citing Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "To impose liability, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Thus, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*

Defendants rely on *McKelvey v. Williams*, 2013 WL 697393 (W.D. La. 2013) in support of their argument that because Plaintiff does not allege that Defendants refused his request for medications, Plaintiff's allegations demonstrate at "most" that "there is some degree of delay, miscommunication, or negligence in the process by which Plaintiff's release forms were handled after he signed them." *R. 6-1, p. 11*. In *McKelvey*, the plaintiff, an inmate, alleged that the prison officials did not provide him with the same therapeutic regimen (medication) ordered by his treating physician prior to his incarceration because the plaintiff no longer had a prescription

13

refill for one of his medicines. *Id. at \*1*. The court found that the plaintiff was treated by a physician who made certain treatment choices throughout the time he was incarcerated, but the plaintiff disagreed with the doctor's treatment choices. *Id. at \*3*. The court ruled that the plaintiff failed to establish deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *Id.* Rather, the court opined, plaintiff's pleadings suggest at worst that the defendants were negligent or guilty of medical malpractice at worst. *Id.*

Defendants contend that *McKelvey* is similar to the instant case because both inmates received some of their medications. They argue that, as in *McKelvey*, the most Plaintiff can demonstrate is that there was "some degree of delay, miscommunication, or negligence" with regard to the repeated requests for Plaintiff signing a "release form." Defendants further argue that Plaintiff's allegations are merely a recitation of the applicable Fifth Circuit standard.

The Court disagrees. Here, Plaintiff alleges that the prison officials essentially ignored his repeated requests for his blood thinner medication despite being informed of his medical condition which included high blood pressure. Claims like Plaintiff's do not constitute "mere disagreement with one's medical treatment." *See Easter v. Powell,* 467 F.3d 459, 463-64 (5th Cir. 2006) (affirming the district court's

denial of summary judgment where a prisoner brought claims that a prison nurse refused to provide nitroglycerin for chest pain—the set course of treatment for chest pain); *see also Lawson v. Dall. Cty.*, 286 F.3d 257, 263 (5th Cir. 2002) (holding the district court did not err by finding deliberate indifference where prison nurses had been instructed to change the plaintiff's dressing three times a day, and provide regular medication, a foam mattress, and hydrotherapy, but did none of these things). Plaintiff's allegations are sufficient to state a claim that Defendants disregarded substantial risks of serious harm by failing to take reasonable measures to abate it, and the delays resulted in substantial harm. *Delaughter v. Woodall*, 909 F.3d 130, 138 (5th Cir. 2018). Plaintiff's complaint thus states a claim for relief for constitutionally inadequate medical care.

### C. *Louisiana State Law Claims*

Defendants contend that Louisiana Civil Code Articles 2322 and 2317.1 "form the basis for Louisiana's premises liability law which imposes liability on the owners or custodians of premises under certain circumstances." R. 6-1, p. 12. They assert that these statutes have no applicability to Plaintiff's claims with the exception of the alleged water leak in the H-pod dormitory area.

The Court agrees. La. C.C. art. 2317.1 provides,

"(t)he owner or custodian of a thing is answerable for damage occasioned by

15

its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

La. C.C. art. 2322 further provides,

"(t)he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

Plaintiff's Complaint contains no allegation related to premises liability with the exception of the water leak which the Court has indicated should be dismissed. Thus, the Court finds that Plaintiff can assert no cognizable claims under La. C.C. art. 2317.1 or 2322.

As to Plaintiff's allegations under Article 2315, the basis for Louisiana negligence law, the Complaint makes no allegation that either Warden Smith or Sheriff Garber were personally involved in any of the events related to his stroke.

Indeed, the only individuals in his allegations other than Warden Smith and Sheriff Garber are an unidentified Nurse Practitioner, Dr. Phillip, a physician at a hospital, and a deputy who allegedly heard the attending physician advise Plaintiff about his condition. *R. 1, ¶¶ 16, 17, 23*. Such allegations are at best claims related to vicarious liability. For the reasons provided in the foregoing, Plaintiff has no claim for vicarious liability against Warden Smith. Moreover, Plaintiff's only potential vicarious liability claim against Sheriff Garber would be an identified deputy who participated in the events which lead to Plaintiff's stroke. As Plaintiff's Complaint names no such individual or individuals, the Court finds that Plaintiff cannot allege a cognizable negligence claim.

### D. *Plaintiff's Alternative Motion to Amend*

In the event the Court finds that Plaintiff has failed to adequately allege his claims, Plaintiff submits his right to amend his complaint "to more clearly and adequately plead the factual basis for his claims." *R. 9, p. 9*. Defendants argue that Plaintiff should not be granted leave to amend. *R. 12*. The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *Marucci*

*Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

The Court has found that Plaintiff has no Section 1983 claim against Warden Paula Smith in her official capacity nor any claim against Sheriff Mark Garber in his official capacity for "creating a hazardous condition caused by water leaking into the H-pod dormitory area" or for maintenance and funding of the jail. Thus, an amendment as to these claims would be futile. Plaintiff's factual allegations as to deliberate indifference related to failure to receive his blood thinner medication and his resulting stroke are sufficient to state a claim to relief that is plausible on its face. Plaintiff has failed, however, to sufficiently allege claims against Sheriff Mark Garber in his official capacity as to understaffing, training or supervision and untrained personnel. The Court finds that justice requires that Plaintiff be given leave to amend his complaint.

## IV. CONCLUSION

For the above assigned reasons,

**IT IS RECOMMENDED** that the Motion To Dismiss filed by Defendants, Mark A. Garber in his Official Capacity as Sheriff of Lafayette Parish and Paula Smith in her Official Capacity as Warden of Lafayette Parish Jail, [Rec. Doc. 6] be **GRANTED IN PART** as to all Section 1983 claims and Louisiana state law claims

against Warden Paula Smith and the Section 1983 claims against Sheriff Mark Garber for "creating a hazardous condition caused by water leaking into the H-pod dormitory area" and for funding and maintenance of the Parish jail as well as the Louisiana state law claims; and **DENIED IN PART** as to Plaintiff's Section 1983 claims for deliberate indifference related to failure to receive his blood thinner medication and his resulting stroke.

**IT IS FURTHER RECOMMENDED** that Plaintiff be allowed to amend his complaint addressing the remaining Section 1983 claims against Sheriff Mark Garber in his official capacity for understaffing, training or supervision and untrained personnel within twenty-one (21) days of the district court's order.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 5th day of February, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE